IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

    v.                CRIMINAL NO. 03-40 ERIE

DEMOND POETRY BEASON


STATUS CONFERENCE


Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Monday, September 20, 2004.


APPEARANCES:
        CHRISTIAN A. TRABOLD, Assistant United States
        Attorney, appearing on behalf of the Government.

        THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1               P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 10:30 a.m., on

4   Monday, September 20, 2004, in Judge's Chambers.)

5

6          THE COURT:  All right, let's go on the record.  I

7   wanted to get both counsel together just briefly by way of a

8   brief status, if you will, preliminary to sentencing in United

9   States versus Beason tomorrow.  I had an opportunity to read

10  the briefs, but I have a couple of questions that will assist

11  me in my preparation.  Preparation from a time saving

12  standpoint, it's better I know it now.

13          At page 10 of the defendant's brief, defendant's

14  position with respect to sentencing factors, footnote one, you

15  take the position that you acknowledge that 4A1.3 was amended

16  effective October 27, 2003, to limit departures for

17  overstatement of criminal history category for career offenders

18  to one criminal history category.  However, you take the

19  position that in the event I were to depart, my discretion here

20  would be not so limited so as to apply that, would essentially

21  run afoul as ex post facto?

22          MR. PATTON:  That's correct.

23          THE COURT:  Do you agree with that, Mr. Trabold?

24          MR. TRABOLD:  I agree with that.

25          THE COURT:  That's number one, we're on the same

3

1  page there.

2          THE COURT:  My second point, and I think I know the

3  answer to it, but in the probation officer's calculations, he

4  focused exclusively on a resisting arrest and one of the drug

5  convictions, not on the counterfeit drug conviction, the other

6  drug conviction.  For purposes of my analysis of this separate

7  issue from a downward departure, obviously, as to whether or

8  not technically career offender status technically applies, do

9  you concede that two drug convictions would otherwise qualify?

10         MR. PATTON:  No.  We do not concede that a

11  conviction for a look alike substance qualifies.

12         THE COURT:  I can't remember if it's in your

13  papers -- do you address that, in the response you do?

14         MR. PATTON:  In my reply to what Mr. Trabold filed I

15  did.  The response is the term counterfeit drug has a

16  recognized definition under federal drug law and under

17  Pennsylvania drug law.  A counterfeit drug means a real

18  controlled substance that is mislabeled to lead someone to

19  believe it's either a different controlled substance or it was

20  manufactured by someone else.  Whereas, what Mr. Beason was

21  convicted of in the Erie County Court of Common Pleas was

22  selling what I would refer to as a look alike substance,

23  something that is not a controlled substance.  But he purported

24  it to be crack cocaine.

25         THE COURT:  The Pennsylvania statute under which he

4

1  was charged, was he convicted for a counterfeit drug, is that

2   in the papers somewhere, does anybody know?

3           MR. PATTON:  What I filed I pulled out of a

4   subsection of the Pennsylvania statutes that Mr. Beason was

5   convicted under.

6           MR. TRABOLD:  35 Pa.C.S.A. Section 70-113(a)(35).

7           MR. PATTON:  And that is, I have the definition of

8   the section of the Pennsylvania code.

9           THE COURT:  I can look it up, it's there.  Do they

10  use the term -- what is their term of counterfeit?

11          MR. PATTON:  When the Pennsylvania drug statute

12  defines the term counterfeit, and that's 35 Pa.C.S.A. Section

13  780-102(b) -- under Pennsylvania law the term counterfeit

14  "means a controlled substance, other drug, device or cosmetic

15  which, or the container or labeling of which, without

16  authorization, bears the trademark, trade name, or other

17  identifying mark, imprint, number or device, or any likeness

18  thereof."  It goes on to explain when they say counterfeit

19  there, means it's an actual controlled substance.  Whereas,

20  under the statute that Mr. Beason was convicted of --

21          THE COURT:  That was it, wasn't it?

22          MR. PATTON:  No, he wasn't charged --

23          THE COURT:  You're talking about the old crime, what

24  was the counterfeit charge?

25         MR. PATTON:  It's a matter of terminology, judge,

                                    5

1  because when you say counterfeit, counterfeit means it's an

2  actual controlled substance that was basically mislabeled or

3  intentionally mislabeled.  Whereas, a look alike substance, he

4  was convicted of selling that at a separate section of the

5  Pennsylvania drug statute, that makes it illegal to sell a look

6  like substance.

7         THE COURT:  It's a separate section?

8         MR. PATTON:  Different subsection.

9         THE COURT:  Okay.

10         MR. PATTON:  The subsection Mr. Beason was convicted

11  under was 780-113(a)(30), the subsection that makes it illegal

12  to sell a counterfeit -- let me make sure I'm giving you the

13  right subsection.  I think I might have that backwards, I'm

14  sorry.  What makes it illegal to sell a counterfeit is 35 PSCA

15  780-113(a)(30).

16         THE COURT:  Your position, then, is that in order to

17  be counterfeit, it has to be mislabeled or something like that,

18  it can't be just trying to pull the wool over somebody else's

19  eyes by selling fake cocaine?

20           MR. PATTON:  Right.  To simplify it for you, I cited

21  to United_States_v._Crittenden, 372 F.3d 706, it's a Fifth

22  Circuit from this year, that case I think the majority opinion

23  sets out the argument --

24           THE COURT:  What's the page on that?

25           MR. PATTON:  It's the whole 706.  The dissent in the

6

1  case sets out an argument for my position as well as I could

2  ever set it out.

3           THE COURT:  Having teed it up, well, for both sides,

4  where does it come down?

5           MR. PATTON:  The majority went on to find that

6  counterfeit could encompass a look alike substance.

7           THE COURT:  In your case the Pennsylvania statute

8  just says counterfeit?

9           MR. PATTON:  Correct.

10          MR. TRABOLD:  That's not the statute he was

11  convicted under. The statute that Tom is citing to that labels

12  it a counterfeit controlled substance, is not the statute that

13  Mr. Beason was convicted of. He was convicted of selling -- I

14  don't know if the Pennsylvania statute uses the phrase, but

15  essentially what amounts to a look alike controlled substance.

16  I'm sure they don't use the phrase look alike, the phrase they

17  use escapes me. Mr. Beason's conviction, which is in the

18  presentence report, he was not convicted of selling a

19  counterfeit substance, which has a separate meaning under the

20  Pennsylvania code. He was convicted of selling, I apologize,

21  the terminology escapes me, he was convicted of selling a look

22  alike substance there, in this case the look alike was crack.

23          THE COURT:  He was convicted at 780-113(a) --

24          MR. PATTON:  (a)(35).

25          THE COURT:  (a)(35).


                                  7


1           MR. PATTON:  Which makes it illegal to distribute a

2  non-controlled substance.

3           MR. TRABOLD:  Really under the Pennsylvania

4  umbrella, the Pa.C.S.A. statute makes it a crime to sell

5   something that looks like the actual thing.

6        MR. PATTON:  In Crittenden they had the exact same

7   situation.  The guy had been convicted under a Texas statute of

8   basically a look alike, but Texas has a separate statute for

9   counterfeiting.  And a majority went with what would be the

10  government's position in the case saying, as used in the career

11  offender guideline, counterfeit can include look alike.

12       THE COURT:  Now, on the subject of departure here,

13  is everyone in agreement then that my discretion on departure

14  would be essentially unlimited, within reasonable grounds but,

15  in other words, I'm not required, if I depart, to go all the

16  way back to what the original guideline would have been; I can

17  simply depart, if I choose to depart, wherever I choose to

18  depart?

19       MR. PATTON:  That's correct.

20       THE COURT:  Do you agree with that?

21       MR. TRABOLD:  Yes.

22       THE COURT:  And I understand you don't agree I

23  should depart at all?

24       MR. TRABOLD:  Even if you decide to depart, I think

25  you have unfettered discretion.

1        THE COURT:  Finally, have you found any cases that

2   are a little more up to date than the 1845 U.S. Supreme Court

3   case on mail because I'll be honest, I've been looking, too.

4   You cited one only slightly, it's an F.Supp. case from I think

5   1955 --

6        MR. TRABOLD:  No, I haven't found anything beyond

7   that.

8        THE COURT:  It astounds me that I can't find

9   anything on mail and property of the United States.  If he's a

10  career offender, that's all moot, isn't it?

11       MR. PATTON:  That's correct.

12       THE COURT:  It doesn't really matter?

13       MR. PATTON:  That's correct.  If the guidelines

14  apply without Blakely coming into the mix at all, you probably
                  ───────

15  don't have to get to the counterfeit issue because the drug,

16  the one drug conviction counts clearly and --

17       THE COURT:  If the government's right on

18  counterfeit, the other one counts?

19       MR. PATTON:  The other one counts.  And resisting

20  arrest, our argument on that would depend on Blakely applying
      ───────

21  and you not being able to make judicial findings as to whether

22  or not that is a crime of violence.  But if Blakely doesn't
      ───────

23  prevent you from doing that, you can look at the resisting

24  arrest and determine had that met the definition of a crime of

25  violence.

9

1          THE COURT:  All right, thank you, counsel.

2

3          (Whereupon, at 10:45 a.m., the proceedings were

4  concluded.)

5

6                    - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                    10


1           C E R T I F I C A T E

2

3

4      I, Ronald J. Bench, certify that the foregoing is a

5   correct transcript from the record of proceedings in the

6   above-entitled matter.

7

8

9

10

11  _____

12  Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25